BUCHANAN v DEPARTMENT OF CORRECTIONS

1. CRIMINAL LAW—DETAINERS—STATUTES—INTERSTATE AGREEMENT
   ON DETAINERS.

   The evil sought to be ended by the interstate agreement on
   detainers is the oppressive delay in trial or hearing on matters
   concerning a prisoner already confined and the corrosive effect
   on prisoner morale and the rehabilitative process in general
   arising from a myriad of untried or unheard allegations of
   other wrongdoing (MCLA 780.601).

2. CRIMINAL LAW—DETAINERS—STATUTES—INTERSTATE AGREEMENT
   ON DETAINERS—PAROLE VIOLATIONS.

   The provisions of the interstate agreement on detainers are not
   applicable in cases of parole violation detainers (MCLA
   780.601).

Original action in the Court of Appeals. Submitted Division 2 August 7, 1973, at Lansing. (Docket No. 15740.) Decided September 27, 1973. Leave to appeal denied, 391 Mich 782.

Complaint by Walter Buchanan against the Department of Corrections for mandamus to compel defendant to quash a detainer placed against the plaintiff. Mandamus denied and complaint dismissed.

Walter Buchanan, *in propria persona.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Thomas A. Carlson,* Assistant Solicitor General, for defendant.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 21 Am Jur 2d, Criminal Law §§ 241–256.

Before: Lesinski, C. J., and Fitzgerald and Quinn, JJ.

Lesinski, C. J. This case comes to us as a mandamus action seeking to compel the defendant to quash a detainer placed against the plaintiff. At issue is whether the Michigan Department of Corrections has the authority pursuant to the interstate agreement on detainers, MCLA 780.601; MSA 4.147(1), to maintain a detainer against Walter Buchanan.

Plaintiff had been convicted of first-degree murder by courts of the Commonwealth of Kentucky in 1947. He was paroled in 1956, and released from supervision under that parole on June 21, 1957. He was never discharged from parole. Subsequently, in April of 1963, a trial in Michigan courts convicted Buchanan of first-degree murder. It was the judgment of the court that he be sentenced to life imprisonment.

On May 8, 1963, plaintiff received notification that authorities in Kentucky had filed a parole violation detainer against him. In August, 1970, plaintiff wrote Kentucky authorities requesting information concerning the detainer lodged against him. Two letters from the Kentucky Parole Board provided an answer. On August 10, 1970, plaintiff was advised that the detainer warrant for parole violation would not be lifted until such time as Michigan took action on his release, at which time Kentucky would decide if they would return him as a parole violator.

Following this, plaintiff filed a complaint for writ of mandamus and motion to show cause in this Court to compel the defendant to remove from its records the detainer filed by Kentucky parole authorities.

We should say at the outset that the plaintiff's brief, lodged *in propria persona,* contends that the detainer is invalid under Kentucky law. If there is merit to that claim, it is for the Kentucky courts to decide. The issue here is the propriety of the Michigan Department of Corrections' action to maintain the detainer.

In an earlier cause involving the identical issue, *Jackiewicz v Department of Corrections,* Docket No. 15359, the Court dismissed the plaintiff's mandamus action by order dated January 8, 1973. The panel concluded that the interstate agreement on detainers was applicable only when the detainers were "based on untried indictments, informations or complaints".

With this ruling we agree. The legislation dealing with this subject provides:

"[T]hat charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." MCLA 780.601; MSA 4.147(1).*

The evil sought to be ended by the agreement on detainers is the oppressive delay in trial or hearing on matters concerning a prisoner already confined, and the corrosive effect on prisoner morale and the rehabilitative process in general arising

* Kentucky is not a signatory to the agreement. This would not prevent granting of relief if it otherwise was warranted. *Rainey v Department of Corrections,* 41 Mich App 313; 199 NW2d 829 (1972).

from a myriad of untried or unheard allegations of other wrongdoing. See *Smith v Hooey,* 393 US 374, 378; 89 S Ct 575, 577; 21 L Ed 2d 607, 611 (1969).

Recent Supreme Court decisions concerning due process and the rights of individual parolees on revocation of their parole indicate acute awareness of parole value to the criminal justice system. *Morrissey v Brewer,* 408 US 471; 92 S Ct 2593; 33 L Ed 2d 484 (1972), held that a parolee is entitled to a fair, albeit informal, hearing before his parole may be revoked. While it is necessary and fundamental that a fair hearing be granted a parole violator as rapidly as possible, the holding there is not applicable here. See *In re Evans,* 18 Mich App 426; 171 NW2d 499 (1969).

We hold that the provisions of the interstate agreement on detainers are not applicable in cases of parole violation detainers.

Mandamus is denied and the complaint dismissed.

All concurred.