Robert BLACKWELL, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Oct. 13, 1976.

Charles G. Wright, Jr., Chattanooga, for appellant.

R. A. Ashley, Jr., Atty. Gen. David L. Raybin, Asst. Atty. Gen., Nashville, Gary D. Gerbitz, Dist. Atty. Gen., Thomas J. Evans, Asst. Dist. Atty. Gen., Chattanooga, for appellee.

OPINION

DUNCAN, Judge.

In this appeal, the appellant Robert Blackwell, complains of a judgment rendered on November 25, 1975, by the Hamilton County Criminal Court, wherein his probation was revoked.

On October 29, 1970, the appellant entered pleas of guilty in 2 cases in the Hamilton County Criminal Court to the offense of grand larceny in each case, receiving a penitentiary sentence of not less than 3 years nor more than 3 years in each case, the sentences to run concurrently. On November 30, the appellant's sentences were suspended and he was placed on probation.

Apparently, the supervision of the probation was transferred to the State of Florida. In December, 1972, the appellant was arrested in Florida and charged with robbery. On February 9, 1973, the Hamilton County Criminal Court ordered that a capias be issued for the appellant's arrest for an alleged probation violation. On June 4, 1973, the appellant entered a plea of guilty to the Florida robbery charge, and received a penitentiary sentence of 5 years. The next development occurred on May 20, 1974, when a detainer was lodged by Tennessee with the Florida authorities.

The appellant alleges that after the detainer was filed, he took proper steps to comply with the Interstate Compact on Detainers, but that the Tennessee authorities failed to return him to Tennessee and try him within 180 days as required by the Act.

At any rate, the appellant was paroled in Florida on October 31, 1975, and subsequently was returned to Tennessee on November 4. After a hearing on November 25, the trial court revoked his probation.

The appellant argues that the failure of the Tennessee authorities to comply with the Interstate Compact on Detainers denied him a speedy trial. We do not agree.

Tennessee Code Annotated § 40–3901 provides, in part, as follows:

"Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the ·place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; . . . ."

■ In our opinion, the detainer involved herein was not based on any "untried indictment, information or complaint"; instead, it was based on a probation violation capias. A careful study of the Interstate Compact on Detainers convinces us that it applies only to an untried criminal offense which is the basis of a charge laid in an indictment, information, or complaint. We interpret the terms "untried" and "complaint," as used in the Compact, as being synonymous with, or at least in the nature of, an untried indictment or information, since some jurisdictions use the term "complaint" in lieu of the terms "indictment" or "information." The term "untried" refers to matters which can be brought to a full trial. In a probation revocation proceeding the trial has already been held, and the defendant has been convicted. In such a hearing, the defendant comes before the court in a completely different posture than he does at his trial before conviction. In discussing a similar situation as it pertained to a parolee's rights at a parole revocation hearing, the United States Supreme Court in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 2600, 2604–05, 33 L.Ed.2d 484 (1972), said:

"We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations.

.    .    .    .    .

"We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial."

Our interpretation of the terms "untried" and "complaint," as they are used in the Interstate Compact on Detainers, is supported by rulings in other jurisdictions. *People v. Diamond,* 59 Mich.App. 581, 229 N.W.2d 857 (1975); *People v. Hallaway,* 39 Mich.App. 74, 197 N.W.2d 335 (1972); *Buchanan v. Michigan Department of Correc-*

**830**

*tions,* 50 Mich.App. 1, 212 N.W.2d 745 (1973); *People v. Batalias,* 35 A.D.2d 740, 316 N.Y.S.2d 245 (1970).

In *Buchanan v. Michigan Department of Corrections,* supra, which involved a parole violation detainer, the Michigan court expressly held that, "The provisions of the interstate agreement on detainers are not applicable in cases of parole violation detainers." In *People v. Hallaway,* supra, the Michigan court, quoting from the New York case of *People v. Batalias,* supra, said: "a charge of violation of probation is not in our opinion an 'untried indictment, information or complaint' . . . ."

From the record, we assume that the appellant was being supervised on his probationary sentences in Florida under authority of the provisions of T.C.A. § 40–3626, which allows a person placed on probation or parole in this State to be supervised in another state which has entered into an agreement with Tennessee to do so. We recognize that this agreement also provides that the sending state may retake the probationer or parolee without any formalities, unless he is suspected of having committed a crime in the receiving state, in which event he shall not be retaken without the consent of the receiving state, until discharged from prosecution or from imprisonment for such offense.

In our opinion, for the appellant to have been returned to Tennessee any earlier than he was, it would had to have been under the provisions of this statute, and only then if Florida had consented. It appears from the record that the Tennessee authorities made no effort to obtain Florida's consent. Notwithstanding, unlike the 180 day provision of the Interstate Compact on Detainers, there are no time requirements contained in T.C.A. § 40–3626. Thus, since Tennessee did not invoke or attempt to invoke the provisions of this statute, we must consider such failure in light of the appellant's complaint that he was denied a right to a speedy trial.

Tennessee Code Annotated § 40-2907 provides that when the trial judge learns of a possible violation of probation he issues a warrant for the arrest of the probationer. After the probationer is arrested, the statute requires that the probation hearing be heard "at the earliest practicable time."

In his brief, the appellant cites *Allen v. State,* 505 S.W.2d 715 (Tenn.1974) for the proposition that the right to a speedy trial is applicable to a probation revocation proceeding, but as we shall later point out, there are marked differences between the *Allen* case and appellant's situation. However, even accepting the *Allen* proposition, and considering the balancing tests enunciated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), we see no merit to the appellant's speedy trial complaint.

Obviously, the delay in the present case was brought about by the appellant's own misconduct that resulted in his incarceration in the Florida penitentiary. Although the appellant requested a speedy hearing, he was not readily accessible to the Tennessee authorities because of his confinement in a foreign jurisdiction. Moreover, we do not think the appellant was prejudiced by the delay involved. His violation (the robbery conviction) was a matter of record. He admitted it at the hearing. In no way did the delay hinder his efforts to defend himself. As a matter of fact, the appellant makes no allegations that the delay impeded his efforts to defend his case in any manner. Thus, the result would have been the same had his revocation hearing been held on the day after his conviction in Florida.

His argument that he may have missed an opportunity to have the trial judge run his revoked sentences concurrent with his Florida sentence is not sufficient to show prejudice in this case. The possibility that the trial judge would have so acted after he had already run the appellant's original sentences concurrently and after the appellant had committed a robbery while on probation is so unlikely as to suggest its total impossibility. Further, the detainer had no effect on the appellant's Florida prison status or privileges. At the hearing, the appellant testified that while this detainer

was in effect, he was in a band which traveled throughout the State of Florida without a guard.

Further, in our opinion, the appellant can take no comfort from the holdings of *Morrissey v. Brewer,* supra, or *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the former requiring a prompt parole revocation hearing, and the latter applying the *Morrissey* principles to probation revocation hearings. At his revocation hearing in the present case, the appellant admitted his violation. In the *Morrissey* case, the court said:

> "If it is determined that petitioners admitted parole violations to the Parole Board, as respondents contend, and if those violations are found to be reasonable grounds for revoking parole under state standards, that would end the matter."

As previously indicated, the case of *Allen v. State,* supra, is distinguishable from the present case. In *Allen,* the court was dealing with an intrastate prisoner. The *Allen* court pointed out that the prisoner "was readily accessible throughout the period." Allen, who was incarcerated in the Tennessee penitentiary during the entire time, was in custody of the Tennessee authorities from the outset. The present case, however, involves an interstate prisoner; one who was not in Tennessee's custody until he was returned to this jurisdiction. He was not available until that time. Further, in *Allen,* the court found prejudice; in the present case, we find no prejudice.

The judgment of the trial court is affirmed.

DAUGHTREY, J., and JERRY SCOTT, Special Judge, concur.