# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### October 8, 2013 Session

## STATE OF TENNESSEE v. MARVIN MCCALL

**Appeal from the Circuit Court for Dickson County**
**Nos. CR5297, CR5699      George C. Sexton, Judge**

_____

**No. M2013-00921-CCA-R3-CD - Filed November 19, 2013**

_____

The Defendant, Marvin McCall, entered a plea of *nolo contendere* to theft in case no. CR5297. The trial court sentenced him to four years to be served in Community Corrections. In case no. CR5699, the Defendant pleaded *nolo contendere* to aggravated burglary and aggravated assault. The trial court sentenced him to four years in Community Corrections to be served consecutively to case no. CR5297. After two subsequent arrests and the issuance of a probation violation warrant, the trial court revoked probation and ordered incarceration for the remainder of the Defendant's sentence. On appeal, the Defendant asserts that the trial court erred: (1) when it failed to dismiss the violation of probation warrant, and (2) when it revoked an expired probation sentence. After a thorough review of the record and relevant authorities, we reverse and dismiss the trial court's judgment revoking the Defendant's expired probation sentence in case no. CR5297, and we affirm the trial court's judgment in case no. CR5699.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROGER A. PAGE, JJ., joined.

Leonard G. Belmares, II, Charlotte, Tennessee, for the appellant, Marvin McCall.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Dan M. Alsobrooks, District Attorney General; and Carey J. Thompson, Assistant District Attorney General for the appellee, State of Tennessee.

**OPINION**

This case arises from multiple violations of the Defendant's alternative sentences resulting in the trial court's revocation of the Defendant's probation. A Dickson County grand jury indicted the Defendant for aggravated burglary, conspiracy to commit aggravated burglary, theft of property valued over $1000.00, and conspiracy to commit theft. On May 18, 2001, the Defendant entered a plea of *nolo contendere* to theft of property valued over $1000.00 (case no. CR5297), a Class D felony. The trial court sentenced the Defendant to four years in Community Corrections.

A Dickson County grand jury subsequently indicted the Defendant for aggravated burglary and aggravated assault. On May 17, 2002, the Defendant pled *nolo contendere* to both charges (case no. CR5699). The trial court sentenced the Defendant to concurrent four-year sentences, once again to be served in Community Corrections. This sentence was to be served consecutively to the Defendant's prior four-year Community Corrections sentence in case no. CR5297, for a total effective sentence of eight years.

On October 18, 2002, the trial court transferred the Defendant's sentence from Community Corrections to supervised probation due to his successful completion of the Community Corrections program.

The Defendant was arrested on September 29, 2005, on charges of sexual battery of a minor and assault of a minor. The trial court issued a probation violation warrant on October 7, 2005, based upon these new arrests, and the warrant was executed on October 13, 2005. A subsequent probation violation warrant was issued on March 6, 2008. The probation violation report summarizes the Defendant's supervision history and the basis of the probation violation as follows:

> [The Defendant] was placed on Community Correction on May 18, 2001, after pleading guilty to aggravated assault, aggravated burglary, and theft. He received a sentence of 8 years. On 10/18/2002, [the Defendant] was transferred to state probation to serve the remainder of his sentence. [The Defendant] did extremely well on probation. He reported every month, paid his fees monthly, paid regularly on court costs, and complied with special conditions. On 9/29/2005, [the Defendant] was arrested for Sexual Battery of a minor and assault of a minor. He made bond and continued to report to probation as before. On 2/5/[2008], he pled guilty to the reduced charge of simple assault and was ordered to serve 180 days in jail beginning on 2/11/[2008], then serve 11 months and 29 days on probation. [The Defendant]

2

never reported to jail. A home visit was done on 3/4/[2008] and it was discovered that [the Defendant] had moved from the residence. The meter was gone and the trailer was empty, except for a few odd items lying around on the floor. [The Defendant] never reported moving. He also left his job in January and failed to report that as well.

According to the Defendant's brief, the warrant was executed on the Defendant on March 4, 2013, in Zephyr Hills, Florida.

The trial court held a probation violation hearing on March 27, 2013, and the parties presented the following evidence: Wendy James, a state probation officer, testified that she began supervision of the Defendant on May 18, 2001, after the transfer of his sentence from Community Corrections to supervised probation. Ms. James said that she filed a probation violation report on March 6, 2008, based upon her determination that the Defendant had absconded. Ms. James recalled a conversation she had with the Defendant before she discovered he had left his place of residence. She said the Defendant told her that he had pending charges and that "he was not going back to jail." He told her that he would not plead guilty because he was not guilty, and if he was found guilty, he would not go back to jail.

Ms. James testified that the Defendant had once made a comment to her about "going out to Arizona[,]" which is where she initially thought he was after she learned he was gone. She said that she had only recently learned that the Defendant was in Florida. She explained her discovery of the Defendant's location as follows:

> I was sitting at my desk one day and he just crossed my mind. I don't know if I had heard something or read something that made him cross my mind but I just pulled his file out and googled his daughter's name and he and his wife came up with his daughter listed as living in Zephyr Hills, Florida. So I contacted Zephyr Hills, Florida, police department and let them know that he was a fugitive from justice and had them run his driver's license and vehicle registration and got an address, and then that's when I called, I think [the District Attorney's] office, to let you know that he was [in Florida]."

She said that authorities in Florida requested extradition papers for transfer, but Ms. James did not have any such paperwork.

Ms. James testified that the Defendant was stopped for a traffic violation in the state of Florida in January 2012. The Florida officer she spoke with could not explain why the Defendant was not arrested at that time for the outstanding warrant. She said that the Defendant had obtained a Florida driver's license in March 2008.

3

On cross-examination, Ms. James testified that the Defendant's case was transferred to an "absconder case load" so she was not aware of what further searches were done to find the Defendant. She said that generally "NCICs" are requested periodically in an attempt to locate absconders.

Ms. James agreed that the Defendant's first four-year Community Corrections sentence, case no. CR5297, began on May 18, 2001, and the probation violation warrant was issued on March 6, 2008.

On redirect examination, Ms. James testified that the Defendant last reported to her on January 3, 2008. She explained that she "waited a couple of months" before going for the home visit when she learned he was gone. Ms. James recounted the events leading up to her discovery of the Defendant's disappearance. She said that, on February 5, 2008, the Defendant was sentenced to serve 180 days to be followed by eleven months and twenty-nine days of probation. The Defendant was supposed to report to her on February 11, 2008, as well as report for service of his 180-day sentence. When the Defendant did not report to jail or meet with Ms. James, Ms. James went to his place of residence on March 4, 2008, and discovered he was gone. Ms. James confirmed that the Defendant did not have permission to leave the State of Tennessee.

Robin McCall, the Defendant's wife, testified that she had lived with the Defendant since 2008. She confirmed that the Defendant obtained a Florida driver's license in April 2008, and his son, "Jesse," lived with them in Florida. She said that Jesse was arrested in Florida for a probation violation and extradited to Tennessee. Ms. McCall said that the Defendant's 89-year-old father, who had been diagnosed with prostate cancer, also lived with the couple.

Ms. McCall testified that from 2008 to the present, she and the Defendant filed joint income tax returns that listed their Florida address. Ms. McCall recalled that the Defendant was stopped for speeding one day on his way home from work. He received a $265.00 speeding ticket but was not arrested and not extradited back to Tennessee for the outstanding probation violation warrant.

On cross-examination, Mrs. McCall testified that she and the Defendant lived together in Tennessee in February 2008. She said that, at that time, she was aware of his convictions and sentences. She agreed that she and the Defendant made the "conscious decision to withdraw from the state [of Tennessee]." When asked if they did so in an effort for the Defendant to evade serving his jail sentence, Ms. McCall replied, "I'm not his mother. He's his own man."

4

After hearing the evidence, the trial court made the following findings:

> Well, [the Defendant] left the state of Tennessee, absconded from probation, apparently absconded from the jail sentence also in another court or maybe even this court, I don't know which one the sentence was out of, but any delay in the hearing of the violation of probation was caused by [the Defendant]. He's had his hearing today. The court finds he's in violation, orders him to serve his sentence.

Upon questioning from defense counsel, the trial court stated that the Defendant's total effective sentence of eight years was being revoked. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant argues that the trial court erred when it failed to dismiss the probation violation warrant on the basis that it denied the Defendant his right to a speedy trial. The Defendant also argues that the trial court erred when ordering the Defendant's effective eight-year sentence to be revoked when the first four-year sentence had expired. The State responds that the Defendant is not entitled to relief on his speedy trial claim, and concedes that the Defendant's initial four-year sentence had expired before the probation violation warrant was filed on March 6, 2008.

### A. Right to a Speedy Trial Claim

The Defendant claims that his right to a speedy trial was violated. Specifically, he claims that the delay was due to bureaucratic indifference or negligence on the part of the State. The State responds that the trial court properly denied the Defendant's claim for violation of his right to a speedy trial. We agree with the State.

The Sixth Amendment to the United States Constitution and the Tennessee Constitution provide a defendant with the right to a speedy trial. U.S. Const. Amend. VI; Tenn. Const. art. I, § 9. The purpose of the right to a speedy trial is to protect defendants from "oppressive pre-trial incarceration, anxiety and concern of the accused, and the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence." *Doggett v. United States*, 505 U.S. 647, 654 (1992). In *Allen v. State*, 505 S.W.2d 715 (Tenn. 1974), our Supreme Court held "that a probation revocation proceeding is a continuation of the criminal prosecution, and, as such, the defendant . . . has a constitutional right to a speedy trial on 'the offense of violation of the terms of probation.'" *Id*. at 719; *see also Blackwell v. State*, 546 S.W.2d 828, 830-31 (Tenn. Crim. App. 1976).

5

In *Barker v. Wingo*, 407 U.S. 514 (1972), the United States Supreme Court developed a four-prong balancing test to determine whether a defendant has been deprived of the right to a speedy trial. The four factors to be considered are: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) and the prejudice suffered by the defendant from the delay. *Id*. at 530. The delay must approach one year to trigger the *Barker* analysis, the line of demarcation depends on the nature of the case. *State v. Utley*, 956 S.W.2d 489, 494 (Tenn. 1997).

In this case, the probation violation warrant was issued on March 6, 2008, and the trial court conducted a hearing on March 27, 2013, when it revoked the Defendant's probation. This delay warrants a further examination of the specific circumstances of this particular case in light of the remaining three *Barker* factors.

The next factor to be considered is the reason or reasons for the delay. *Barker*, 407 U.S. at 531. The reasonableness of a delay depends on the complexity and the nature of the case. *Doggett*, 505 U.S. at 652. In *State v. Wood*, our Supreme Court identified four possible reasons for delay, which include:

(1) intentional delay for tactical advantage or to harass the defendant;
(2) bureaucratic indifference or negligence;
(3) necessary delay for the fair and effective prosecution of the case; and
(4) delay agreed to or caused by the defendant.

*State v. Wood*, 924 S.W.2d 342 (Tenn. 1996). In this case, the Defendant contends that the delay was due to the State's bureaucratic indifference or negligence. The Defendant asserts in his brief that "the State of Tennessee has made no reasonable effort to locate the [Defendant]" and that this constitutes "gross negligence." The State contends that the trial court correctly found that the Defendant "absconded from probation" and that "any delay in the hearing of the violation of probation was caused by [the Defendant]."

Our review of the record reveals that the Defendant was serving an effective eight-year sentence on probation when he was arrested on September 9, 2009, for sexual battery and assault of a minor. The Defendant notified his probation officer of this new arrest and stated his intention not to return to jail. Thereafter, the Defendant pled guilty to a reduced charge of simple assault and was sentenced to serve 180 days in jail beginning on February 11, 2008. The Defendant was to meet with his probation officer on the same day he was to report to jail. When he did not make his probation appointment and his probation officer learned that he had not reported to jail, the probation officer made a home visit and found that the Defendant no longer lived at the residence. A probation violation warrant was issued on March 6, 2008, and

6

was served, according to the Defendant, on March 4, 2013. The trial court held a hearing on the probation violation warrant on March 27, 2013. This evidence does not support a finding that the delay in this case is attributable to the State's negligence or indifference. The Defendant created the delay by absconding. The State had no indication of where the Defendant might have fled. The fact that the Defendant was successful in evading service of his sentences for five years does not evidence a lack of diligence on the part of the State.

As for the Defendant's role in the delay, it is our view that the situation was of his own making. The Defendant willfully fled the State in an attempt to avoid serving a jail sentence. Because the Defendant caused the delay, the reason for the delay weighs against the Defendant.

A defendant's assertion of his speedy trial right, while not required, is "entitled to strong evidentiary weight." *Barker*, 407 U.S. at 531. Failure to assert the right ordinarily will make it difficult to prove that the right has been denied. *Id*. The Defendant asserted his right to a speedy trial one day before the probation violation hearing. As the State points out, the Defendant now asserts his right to a speedy trial not because he wants his day in court, but because he wants to avoid his day in court.

Finally, we consider the prejudice to the Defendant caused by the delay, in light of the interests protected by the speedy trial right. *Barker*, 407 U.S. at 532. The U.S. Supreme Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. *Id*. The Defendant asserts that the delay prejudiced him because during the course of the five years, he was employed, had "built a relationship with grandchildren, and has taken care of an ill father." The Defendant does not assert that he suffered from oppressive pretrial incarceration, that he experienced undue anxiety and concern due to the delay, or that his defense was impaired. The issues he identifies as the prejudicial effects of the delay are more accurately characterized as benefits he received from his act of absconding. He sought to avoid serving jail time and he did so for five years. Respectfully, the choices he made to work and participate in family life are not "prejudices" suffered by the Defendant for purposes of our speedy trial analysis.

While the delay was sufficient to trigger a *Barker* inquiry, the Defendant has failed to establish a meritorious claim for a speedy trial violation. Accordingly, the Defendant is not entitled to relief as to this issue.

**B. Revocation of Original Sentence**

The Defendant argues that because the four-year sentence in case no. CR5297 had

expired prior to the issuance of the probation violation warrant, the trial court erred when it revoked his entire eight-year sentence. We agree with the Defendant. The State concedes that the Defendant's four-year sentence in case no. CR5297 had expired before the probation violation warrant was filed.

Generally, a trial court's authority to revoke a probation sentence extends only to the probationary period. *Alder v. State*, 108 S.W.3d 263, 267 (Tenn. Crim. App. 2002). If consecutive sentences are involved, the trial court may revoke the suspended sentence in only those cases in which the term of the individual sentence has not expired before the filing of the revocation warrant. *State v. Anthony*, 109 S.W.3d 377, 381-82 (Tenn. Crim. App. 2001).

In the present case, the Defendant was sentenced to four years in case no. CR5297 on May 18, 2001. This sentence expired on May 18, 2005. The probation violation warrant in this case was filed after May 18, 2005, and, therefore, the trial court could not revoke the Defendant's sentences in case no. CR5297. Accordingly, we reverse and dismiss the trial court's judgment in case no. CR5297. We affirm the trial court's judgment in case no. CR5699 and remand for further proceedings consistent with this opinion.

### III. Conclusion

After review of the record and applicable law, we conclude that the Defendant's right to a speedy trial was not violated. For the reasons stated above, we reverse the trial court's judgment in case no. CR5297, affirm the trial court's judgment in case no. CR5699.

_____
ROBERT W. WEDEMEYER, JUDGE