IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 2, 2016 Session

**STATE OF TENNESSEE v. GREGORY L. MOODY**

**Appeal from the Circuit Court for Dyer County**
**No. C00-70B, C00-409      R. Lee Moore, Jr., Judge**
_____

**No. W2016-00425-CCA-R3-CD – Filed September 15, 2016**
_____

The trial court found that the Defendant, Gregory L. Moody, violated the conditions of his probation when he was arrested and convicted of multiple crimes in North Carolina and failed to appear at his first meeting with his probation officer.  The Defendant asserts that his due process rights were violated by the trial court because of a delayed hearing on the violation of probation and lack of appointed counsel, and he asserts he is entitled to sentencing credits.  After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

James E. Lanier, District Public Defender, and H. Tod Taylor, Assistant District Public Defender, for the appellant, Gregory L. Moody.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

The Defendant, Gregory L. Moody, pled guilty on January 3, 2001, to one count of burglary and one count of failure to appear.  He received a sentence of four years for the burglary conviction and a sentence of two years for the failure to appear conviction.

The Circuit Court for Dyer County aligned the sentences consecutively for a total effective sentence of six years. The trial court, however, suspended the burglary sentence after ten months' imprisonment and completely suspended the failure to appear sentence.

The Defendant's probation officer, Rebecca Cashion, issued a violation of probation report for the Defendant in July 2001, after he failed to report to his probation officer and submit a required DNA specimen. Ms. Cashion issued a second violation of probation report for the Defendant in December 2003 based on the allegation that the Defendant left the State without informing his probation officer and that he was subsequently arrested in North Carolina.

While serving his sentence for his 2004 conviction in North Carolina, the Defendant sent notice of his sentence to the District Attorney General. He sent a letter to the Dyer County Courthouse informing the court of his location, requesting the name of the judge dealing with his violation of probation matter, waiving his right to counsel and right to appear, and requesting that his violation of probation sentence run concurrently with his time incarcerated in North Carolina. After receiving this letter, the trial judge entered an order holding that the Defendant could not, without infringing on due process, be brought before the court properly until he was released. The Defendant then sought appointment of counsel from the court for his violation of probation matter. The trial court treated the Defendant's request as a motion to be stayed until the Defendant was before the court.

After being moved to a new jail in North Carolina, the Defendant filed a petition for writ of habeas corpus asserting that his due process rights were violated by an alleged conflict of interest between his attorneys from two unrelated convictions from 1988 and 1999. The trial court dismissed the petition, holding that the petition was irrelevant to the detainer action and did not meet the requirements for habeas corpus relief.

In its 2015 order finding the Defendant in violation of his probation, the trial court made findings of fact regarding the Defendant's history of incarceration. According to the order, in 2006, the State of Tennessee requested a transfer of the Defendant, which North Carolina granted. The trial court appointed counsel, and the Defendant posted bail. The Defendant then failed to appear in court and was indicted for failure to appear that same year.

The trial court found that by 2008, the North Carolina Department of Corrections gained custody of the Defendant again. The Defendant provided the District Attorney General with notice of his location. The Defendant filed another letter with the Circuit Court of Dyer County moving for dismissal or concurrent sentencing for the violation of probation with his North Carolina sentence. The court did not enter an order in response.

After several months, the Defendant again requested appointment of counsel. Later that year, the State of Tennessee sought to regain custody of the Defendant. The State of North Carolina, however, released the Defendant eight days later.

By 2012, the Defendant was again in the custody of the North Carolina Department of Corrections. The State of North Carolina then released the Defendant to the custody of Dyer County, Tennessee, in 2013. He was later released on bond.

On August 3, 2015, the Defendant's violation of probation revocation hearing finally occurred. At the hearing, the Defendant admitted that he understood that leaving Tennessee without informing his probation officer was a violation of probation. The Defendant, however, testified that he believed he was entitled to sentencing credits because of time served in North Carolina for an unrelated conviction. He testified that he received a harsh sentence in a high-security facility in North Carolina due to his outstanding probation revocation matters in Tennessee for otherwise minimum-security offenses. Further, he testified that North Carolina Department of Corrections kept him in jail for about twenty days after the end of his sentence while awaiting extradition to Tennessee for determination of the present violation of probation matter. The trial judge held at this hearing that the Defendant violated the terms and conditions of his probation. The trial judge then ordered the parties to submit memoranda to the court for determination of the issue of sentencing credits.

After considering both the Defendant's and the State's memoranda on sentencing credits and constitutional violations, the trial court found "no merit to the defendant's claim of violation of any of [the Defendant's] due process rights nor is the defendant entitled to [sentencing] credit as claimed." The Defendant now appeals.

## ANALYSIS

The trial court summarized the Defendant's argument as follows:

The defendant now argues that because the District Attorney General and his probation officers either had knowledge of his incarceration in North Carolina or should have known about it so that he should be given credit on his probation violations in Tennessee while he was serving his North Carolina sentences. He argues that [the] failure of [the trial court] to accept his request for an attorney and a disposition of his case while he was serving a sentence in North Carolina, deprived him of his right to speedy trial. In the alternative, he seeks jail credit from October 12, 2004 through February 16, 2006; from December 19, 2008 through November 18, 2009[;] and from October 12, 2012 through August 29, 2013.

-3-

## I.  Right to a Speedy Trial

The Defendant claims he is entitled to relief based on a right to a speedy trial. "[T]he Supreme Court enunciated the following four-factor balancing test for courts to apply when evaluating a speedy trial claim: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice suffered by the defendant from the delay." *State v. Simmons*, 54 S.W.3d 755, 759 (Tenn. 2001) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

Although the Defendant is correct that a speedy trial inquiry is generally triggered because of a delay exceeding one year, the delay, while considerable, is reasonable in light of the Defendant's incarcerations, absence from the jurisdiction, and repeated disappearances.  We acknowledge that in this case, the delay between the initial violations in 2001 and 2003 and the hearing in 2015 was considerable.

Nevertheless, the reason for the delay is directly attributable to the Defendant's repeated criminal misconduct.  The Interstate Compact on Detainers does not generally apply to revocation of probation. *See State v. Warren*, 740 S.W.2d 427, 427 (Tenn. Crim. App. 1986); *Blackwell v. State*, 546 S.W.2d 828, 829 (Tenn. Crim. App. 1976) ("A careful study of the Interstate Compact on Detainers convinces us that it applies only to an untried criminal offense which is the basis of a charge laid in an indictment, information, or complaint.").  Based on this concept, the District Attorney represented to this court that he was not able to "take action on the detainer on a probation violation."  Here, the Defendant was incarcerated on three separate occasions in North Carolina after his initial violation of probation.  Additionally, the Defendant left the State of Tennessee on three occasions without permission from his probation officer after the imposition of his probation.  The Defendant also absconded from the hearing on the probation violation which was scheduled in 2006, after he had been released on bond.  The reason for the delay is simple: the Defendant repeatedly fled the jurisdiction of the State of Tennessee.

The Defendant argues that he asserted his right to a speedy trial in a letter to the Dyer County Courthouse in 2004.  In the letter, the Defendant requests to be appointed counsel by the court.  The Defendant argues that Tennessee Code Annotated section 40-14-101 combines the right to a speedy trial and right to counsel, and that, therefore, the Defendant asserted his right to a speedy trial.  T.C.A. § 40-14-101 ("In all criminal prosecutions, the accused is entitled to a speedy trial and to be heard in person and by counsel.").  The Defendant does not cite additional authority for this proposition.  Further, the State correctly noted that the Defendant did not explicitly assert his right to a speedy trial until nearly three years after he was appointed counsel.  The *Simmons* court held that this factor is especially relevant when "an accused [] is unaware of pending charges."  Here, the Defendant was aware of the charges.  The Defendant had appointed

counsel for three years before explicitly asserting his right to a speedy trial. Far from attempting to accelerate the resolution of his probation revocation, the Defendant absconded from the custody of the State of Tennessee in 2006, and he again disappeared after the State of North Carolina mistakenly released him in 2009.

Finally, the Defendant acknowledged the violation of his probation and does not assert that he was prejudiced in preparing for the hearing on the violation. *See Blackwell,* 546 S.W.2d at 830. While the Defendant may have suffered some changes in the conditions of his imprisonment in North Carolina due to his outstanding violation warrant, the Defendant was ultimately responsible for much of the delay in bringing the proceedings, and he was not prejudiced in presenting a defense to the violation allegations.

The Defendant relies on *Allen v. State*, 505 S.W.2d 715, 718 (Tenn. 1974) to support his contention that his right to a speedy trial on the revocation warrant was violated. The Tennessee Supreme Court in *Allen* stated, "[W]e expressly hold that a probation revocation proceeding is a continuation of the criminal prosecution, and as such, the defendant in the instant case has a constitutional right to a speedy trial on 'the offense of violation of the terms of probation.'" *Allen*, 505 S.W.2d at 718.

In *Allen*, the defendant was serving a twenty-seven year sentence from Davidson County in a Tennessee penitentiary. As a result of the defendant's Davidson County conviction, a revocation warrant was issued in Marshall County where the defendant was on probation. No further action was taken on the revocation warrant until over two and one-half years later when the defendant was about to be considered for parole on the Davidson County conviction. At that time, a detainer request was filed by the State at the state penitentiary setting the hearing date in the revocation warrant. Upon the defendant's return to Marshall County for the revocation hearing, the defendant was finally served with the revocation warrant. The court concluded that the delay in having a hearing on the probation violation warrant violated the defendant's right to a speedy trial. The major distinction between the *Allen* case and the case at bar is that the defendant in *Allen* was incarcerated in the State of Tennessee and was what the court considered to be "readily accessible" for a hearing on the revocation warrant. *Allen*, 505 S.W.2d at 716.

The present case is more akin to *Blackwell*, 546 S.W.2d 828, wherein this court pointed out a significant difference between *Allen* and a case where a defendant is incarcerated in another state. In *Blackwell*, the defendant was incarcerated in Florida on a robbery conviction and the hearing on his probation revocation was not had until he was released from Florida custody. This court stated that "the delay in [*Blackwell*] was brought about by the appellant's own misconduct that resulted in his incarceration in the

Florida penitentiary." *Blackwell*, 546 S.W.2d at 830. We ultimately held that the delay that the defendant brought upon himself by his own misconduct did not result in a violation of his right to a speedy trial. *Id.*

The Defendant attempts to distinguish *Blackwell* by asserting that the *Blackwell* trial judge did not know of the defendant's whereabouts, whereas here, the trial judge was on notice of the Defendant's location: North Carolina prisons. The Defendant is not entitled to relief on this distinction because the *Blackwell* court was aware of the defendant's whereabouts. *Blackwell*, 546 S.W.2d at 829 (noting that the State issued a detainer for the defendant less than one year after his Florida guilty plea and more than a year before the defendant's release from the Florida prison).

This case presents substantially the same situation as *Blackwell* dealing with an interstate prisoner. Here, the State could not obtain jurisdiction upon the defendant until he was released from North Carolina, and he was not available for the revocation hearing until that time. The Defendant fled the State of Tennessee for the State of North Carolina while out on bond. Even if we accept the Defendant's argument that his 2004 letter to the trial court should be interpreted as a demand for a speedy trial, the Defendant's repeated and wrongful departures from the trial court's jurisdiction constitute waiver of the demand. We hold that the defendant was not deprived of his right to a speedy trial and that any delay was a result of his own misconduct.

## II. Right to Counsel

The Defendant argues that the trial court deprived him of his right to counsel for failing to provide him with counsel while imprisoned in North Carolina. As discussed earlier, the State of Tennessee was unable to extradite the Defendant. Further, the Defendant failed to submit authority to support his contention that he should have been provided with counsel before he was properly brought before the trial court. We hold that the Defendant is not entitled to relief based on his right to counsel. A probationer is entitled to counsel upon request when shown that "based on a timely and colorable claim … that, even if the violation … is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present." *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973). Here, the violation is uncontested; the defendant admitted that his North Carolina convictions were violations of his probation in Tennessee. The Defendant offered no justification for the violations. The Defendant offered no mitigating reasons for the violations. The trial court did, in fact, immediately grant his request for appointed counsel upon being brought before the court.

## III. Sentencing Credits

Although the Defendant raised the issue of sentencing credits, he failed to submit to this court an argument supported by legal precedent on this issue. This court requires that parties support their arguments with legal citations and citations to the record, or we consider them waived. Tenn. Ct. Crim. App. R. 10(b). We hold that the Defendant, thus, waived this issue.

## CONCLUSION

Based upon the foregoing reasons, we affirm the judgment of the trial court.


_____
JOHN EVERETT WILLIAMS, JUDGE