FILED
05/04/2022
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 13, 2022

## STATE OF TENNESSEE v. COREY TAYLOR

**Appeal from the Criminal Court for Davidson County**
**No. 2014-I-270     Jennifer Smith, Judge**

_____

### No. M2021-00954-CCA-R3-CD

_____

Defendant, Corey Taylor, entered a guilty plea to aggravated assault and was sentenced to four years, suspended to supervised probation. Following a hearing on a warrant alleging a violation of probation based on new arrests and failure to report, the trial court found defendant in violation, revoked his probation, and ordered him to serve the remainder of his sentence in confinement. On appeal, Defendant argues that the trial court erred in declining to dismiss the probation violation warrant on speedy trial grounds. Following our review of the entire record and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which J. ROSS DYER and JOHN W. CAMPBELL, SR., JJ., joined.

Jessica Dragonetti, Nashville, Tennessee (at hearing and on appeal), and Jeffrey A. DeVasher, Nashville, Tennessee (on appeal), for the appellant, Corey Taylor.

Herbert H. Slatery III, Attorney General and Reporter; Clark D. Hildabrand, Assistant Solicitor General; Glenn R. Funk, District Attorney General; and Shannon Poindexter and Doug Thurman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Factual and Procedural Background

Facing charges for aggravated robbery and aggravated kidnapping, Defendant waived his right to be tried on presentment or indictment by the grand jury and proceeded

by criminal information to plead guilty on February 28, 2014, to one count of aggravated assault. The following statement of facts was presented at Defendant's plea hearing:

> Thank you, Your Honor. Had this matter, the State of Tennessee versus Corey Taylor, case 2014-1-270, gone to trial, the State would produce witnesses and evidence to show that [Defendant] on January 7th of this year, here in Davidson County, did in fact force a number of victims at knife point into a bedroom. There were various threats made by [Defendant], including threats to burn down the house, threats to kill various of the individuals in the room. And ultimately, they begged him to please stop kicking on one of the victims because he was in fact disabled. Ultimately, [Defendant] left of his own accord, [leaving] the victims in the bedroom, stole some car keys and stole one of the victims' cars.
>
> Based on those facts and upon [Defendant's] plea to aggravated assault in Count 1, the State recommends a 4-year sentence. That would be suspended. He will be placed on supervised probation, and there will be an order that he undergo treatment with the Mental Health Cooperative.

By agreement, Defendant was sentenced as a Range I offender to four years, suspended to supervised probation with the condition that he undergo treatment with the Mental Health Cooperative. In exchange for his plea, all of Defendant's other charges were dismissed. Defendant acknowledged and agreed to the terms and conditions of probation.

Following a fire in Defendant's apartment in March 2014, Defendant's probation officer permitted Defendant to stay with his mother in Ohio provided that he communicated his "travel information" and "a verifiable phone number." The record is unclear as to how long Defendant was "allowed" to stay with his mother in Ohio. However, while in Ohio, Defendant was arrested on two occasions for domestic violence and aggravated menacing. In August 2014, following his second arrest in Ohio, Defendant served a 170-day sentence. Defendant failed to report the two Ohio arrests to his Tennessee probation officer and failed to report in Tennessee in April, May, June, July and August of 2014. Defendant had also failed to pay $243 in probation fees as of August 2014. On September 10, 2014, Defendant's probation officer filed an affidavit alleging that Defendant had violated the terms of his probation by being arrested twice, failing to report to his probation officer and failing to pay his probation fees, and a warrant was issued.

*Probation Revocation Hearing*

A hearing on the probation violation warrant was scheduled for August 4, 2021. Prior to the hearing on the merits of the warrant, Defendant asserted his right to a speedy trial. Defendant testified about his charges in Ohio and further testified that he became aware of the Tennessee warrant while serving his sentence in Ohio. He testified that upon his release in Ohio, he traveled to Chicago, Illinois without reporting to his Tennessee probation officer. Defendant was arrested in Illinois for offenses including reckless conduct, assault, aggravated assault of a person over sixty years old, possession of marijuana, domestic assault, aggravated assault involving a weapon, aggravated assault involving a police officer, and aggravated battery against a government employee. The charge for aggravated battery of a government employee resulted in Defendant's incarceration for approximately ten months beginning in October 2015. Thereafter, Defendant was released for "good behavior," but then violated his "mandatory supervision sentence" and served another four months in prison. Defendant was again notified of the warrant in Tennessee. When he was released for the second time in Illinois, Defendant did not return to Tennessee, but instead traveled to Texas and Missouri.

While in Missouri, in 2017, Defendant led police "on a high-speed chase" and "was arrested for tampering with a motor vehicle and resisting arrest." As a result, Defendant was incarcerated from November 2017 until January 2018. Upon his release, Defendant was again arrested on February 23, 2018, for third-degree assault. Defendant remained incarcerated until August 7, 2018, when he was placed on probation in Missouri. While on probation in Missouri, and aware of the warrant in Tennessee, Defendant traveled to Wisconsin. There, Defendant was arrested on March 19, 2019, for second-degree reckless endangerment, misdemeanor battery, disorderly conduct, strangulation and suffocation. Defendant served 125 days for his misdemeanor battery conviction before Wisconsin "accidentally released [him] because [he] also had an extradition hold from Missouri." Defendant was once again notified of the warrant in Tennessee. Following his release in Wisconsin, in August 2019, Defendant was arrested for disorderly conduct and was subsequently extradited from Wisconsin to Missouri. Defendant was kept in custody in Missouri from August 2019 until he was extradited to Tennessee in July 2021. Upon his arrival in Tennessee on July 22, 2021, Defendant was served with the warrant.

Defendant testified that he had been "locked up" and that he intentionally did not return to Tennessee. Defendant testified that he "was notified" by officials in Ohio that he "had a warrant out of Tennessee" and that "local authorities" told him "that Tennessee had placed a hold but that Tennessee was not going to extradite [him.]" Specifically, Defendant testified that the Ohio judge told him, "you have a warrant in Tennessee," and that, "as long as [you] stay away from Tennessee, [you] never have to worry about it." Defendant testified that at his probation violation hearing in Illinois, he was "again" notified that "he

- 3 -

ha[d] a warrant out of Tennessee" but that Tennessee was "not willing to extradite [him]." Defendant testified that he was told to "stay away from Tennessee" on multiple occasions. While in Missouri, Defendant testified that he believed that Missouri contacted Tennessee and that he was told "hey, stay away from Tennessee." Defendant testified that the reason that he did not return to Tennessee, despite his knowledge of the warrant, was that he was told if he did not return to Tennessee, he would "never have to worry about it."

Defendant explained that "back in 2019, [he] was served with the packets of warrants [he] had" and in response, had tried to "write to Tennessee" but he "kept getting mail back." When he received a "Return to Sender" letter on November 20, 2019, Defendant testified, "I just said forget it." He was later extradited to Tennessee to answer the warrant. When asked if he could defend against the charge of having violated his probation, Defendant said, "I mean, it don't take a rocket scientist. Ray Charles and Stevie Wonder can see that I was locked up and I've been in custody."

After consideration of the *Barker*[1] factors for evaluating an alleged violation of the right to a speedy trial, the trial court made the following findings:

> The length of the delay in this case obviously exceeds the one-year period that is set forth in *Barker*, which under *Barker* there is a presumption of prejudice there.
>
> But the Court has looked at the reasons for the delay and considered [Defendant's] testimony. And the fact of the matter is - the Court does not find administrative negligence as the reason for the delay. The Court finds that [Defendant] failed to comply with the conditions of his probation and failed to report to his probation officer despite learning on multiple occasions that there was a warrant outstanding.
>
> He knew that this warrant was outstanding. He knew he had obligations on a sentence in Tennessee. And so the Court places the reason for the delay squarely on [Defendant's] shoulders.
>
> The Court also doesn't find that [Defendant] is prejudiced in his ability to defend against the warrant in this case, has not found that there is any critical missing witness here that would in any way alter the outcome of this proceeding.

---

[1] *Barker v. Wingo,* 407 U.S. 514, 530 (1972).

So the Court is going to deny the motion to dismiss for—on speedy trial grounds.

Following the trial court's ruling on the speedy trial issue, Defendant conceded that he was in violation of the terms of his probation. The court then proceeded with the second step of the hearing to determine the appropriate consequence of the revocation of his probation. Defendant was recalled and testified about the conditions of his parole in Missouri. Based upon all of Defendant's testimony, the trial court ruled:

> . . . [Defendant] has violated probation on numerous occasions. He committed multiple criminal offenses, including violent offenses in other states while on probation in Tennessee. He committed those offenses - began committing those offenses within two months of being placed on probation here.
>
> He has proved that he is not a good candidate for release in the community. He owes the State of Tennessee 4 years for this offense. And so I'm going to sustain the violation based on the new criminal charges and place his sentence into effect.

This timely appeal follows.

**Analysis**

On appeal, Defendant contends that the trial court erred in failing to dismiss his probation violation warrant on speedy trial grounds. Specifically, Defendant argues that the State's delay in its pursuit of the revocation denied him his constitutional right to a speedy trial. The State responds that the trial court correctly rejected Defendant's speedy trial argument because Defendant conceded that he violated the terms of his probation, caused the delay in his revocation by absconding from state to state and did not assert his speedy trial rights until he was extradited back to Tennessee. We agree with the State.

The trial court has the authority to revoke a defendant's probation. T.C.A. § 40-35-310, -311. The Tennessee Supreme Court recently held that a trial court's probation revocation decision is reviewed for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decision as to the revocation and the consequence on the record." *State v. Dagnan,* No. M2020-00152-SC-R11-CD, — S.W.3d —, 2022 WL 627247, at *6 (Tenn. Mar. 4, 2022). Probation revocation is a "two-step consideration" that requires the trial court to (1) determine whether to revoke probation; and (2) determine the appropriate consequence for a revocation. *Id.* at *5. A trial court abuses its discretion when it applies incorrect legal

- 5 -

standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party. *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). If the trial court revokes a defendant's probation, the trial court may (1) order incarceration; (2) order the sentence into execution as initially entered, or, in other words, begin the probationary sentence anew; (3) return the defendant to probation on modified conditions as necessary; or (4) extend the remaining probationary period for a period not to exceed two years. T.C.A. §§ 40-35-308(a), -308(c), -310, 311(e)(1); *see State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999).

As an initial matter, Defendant admitted to having violated the terms of his probation. The trial court found, and the record supports, that Defendant violated his probation. The trial court then revoked Defendant's probation based upon his unsuccessful history with the terms of his probation and his criminal behavior while on probation. The trial court did not abuse its discretion in revoking Defendant's probation and ordering him to serve the balance of the sentence in incarceration. We turn now to Defendant's claim that his right to a speedy trial was violated by the seven-year delay in the service of and hearing on his probation violation warrant.

The United States and Tennessee Constitutions guarantee the right to a speedy trial in criminal prosecutions. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see also* T.C.A. § 40-35-311(b) (providing for a determination of whether probation was violated "at the earliest practicable time"). A probation revocation proceeding is a criminal prosecution triggering the right to a speedy trial. *Allen v. State,* 505 S.W.2d 715, 719 (Tenn. 1974); *Rickey E. Hutchings,* M2008-00814-CCA-R3-CD, 2009 WL 1676057, at *4 (Tenn. Crim. App. June 16, 2009). Recently, in *State v. Moon*, our supreme court held that the standard for appellate review of whether a criminal defendant was denied his constitutional right to a speedy trial is de novo review with respect to whether the court correctly interpreted and applied the law, with deference to the trial court's findings of fact unless the evidence preponderates otherwise. No. M2019-01865-SC-R11-CD, — S.W.3d —, 2022 WL 1160781, at *4 (Tenn. Apr. 20, 2022). In evaluating a claim that the accused was denied the right to a speedy trial, this court considers: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) the prejudice suffered by the defendant from the delay. *State v. Bishop,* 493 S.W.2d 81, 83-84 (Tenn. 1973) (citing *Barker,* 407 U.S. at 530); *see also State v. Simmons,* 54 S.W.3d 755, 758 (Tenn. 2001). This court must evaluate, on a case-by-case basis, whether the circumstances indicated that the accused was deprived of the right to a speedy trial. *State v. David Herl,* No. W2020-01671-CCA-R3-CD, 2021 WL 4938138, at *3 (Tenn. Crim. App. Oct. 22, 2021) (citing *Simmons,* 54 S.W.3d at 762). Therefore, we consider the relevant factors.

The length of the delay is a threshold inquiry, and unless there has been a delay which is presumptively prejudicial, evaluating the delay in the context of the nature and complexity of the case, the other factors need not be considered. *Simmons,* 54 S.W.3d at 759. A delay approaching one year will generally trigger a speedy trial analysis. *Id.* In this case, the State concedes that the nearly seven-year delay in prosecuting a probation violation suffices to meet this threshold inquiry.

The reason for the delay generally falls into one of the following categories: "(1) intentional delay to gain a tactical advantage over the defense or delay designed to harass the defendant; (2) bureaucratic indifference or negligence; (3) delay necessary to the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in, by the defense." *State v. Wood,* 924 S.W.2d 342, 346-47 (Tenn. 1996). Intentional delay is "weighted heavily" against the State while "negligence or oversight are considered against the government but afforded comparatively more neutral weight." *Barker,* 407 U.S. at 531. However, "a court's tolerance for negligent delay is inversely proportional to the length of the delay." *Simmons,* 54 S.W.3d at 760.

Defendant asserts that the delay in this case was caused by bureaucratic indifference or negligence, while the State maintains that the delay was caused by Defendant's absconding from state to state, resulting in his repeated incarceration outside the state of Tennessee. Defendant relies on the case of *Rickey E. Hutchings,* in which this court concluded that the "inordinate delay" in failing to prosecute a probation violation for nine years weighed heavily against the State. 2009 WL 1676057, at *7. In *Rickey E. Hutchings,* the State was aware of the defendant's location while he was incarcerated in a federal prison and was later put on probation in a Tennessee county, but the State took no action to prosecute the probation violation. *Id.* The defendant returned to Tennessee upon his release and contacted the State in order to notify them of his return. Here, Defendant neither returned to Tennessee, nor contacted the State following his release from any of the multiple incarcerations in other states. Defendant acknowledged that he was aware of his pending warrant while incarcerated in other states. The instant case is also distinguishable from *Allen,* wherein the Tennessee Supreme Court held that the defendant's right to a speedy trial had been violated where the defendant was incarcerated in Tennessee and the State took no action to prosecute his pending charges. 505 S.W.2d at 716. Here, the record is void of documentation regarding when the State became aware of Defendant's whereabouts. Further, Defendant was not incarcerated in Tennessee, but was incarcerated in multiple other states, was aware of the Tennessee warrant, and continued to fail to report to Tennessee upon release.

The State argues that the reason for the delay was attributable to the Defendant's misconduct, thereby weighing against granting relief. In *Blackwell v. State,* this court denied relief when a probation violation was delayed for one year, concluding that "the

delay in the present case was brought about by the [defendant]'s own misconduct that resulted in his incarceration" in another state, where he was "not readily accessible" to Tennessee state officials. 546 S.W.2d 828, 830 (Tenn. Crim. App. 1976). In this case, the seven-year delay began when Defendant stopped reporting for probation in Tennessee. During the period of time between the warrant being issued and Defendant being served with the warrant, he was incarcerated in Ohio, Illinois, Missouri and Wisconsin on multiple occasions. This court, in *Gregory L. Moody,* attributed a fourteen-year delay to the defendant, who had absconded from Tennessee and was imprisoned multiple times in North Carolina. No. W2016-00425-CCA-R3-CD, 2016 WL 4973478, at *1-2 (Tenn. Crim. App. Sept. 15, 2016). The defendant in *Gregory L. Moody* notified Tennessee state officials of his location upon each release. *Id.* Nonetheless, this court concluded that the delay in prosecution was attributable to the defendant's repeated criminal misconduct, and the periodic nature of the defendant's out-of-state incarceration was not dispositive. *Id.* Here, other than his testimony, Defendant offered no proof that the State of Tennessee knew of his location for service of the warrant. *See David Herl,* 2021 WL 4938138, at *4. We conclude that the delay in this case was caused by Defendant's misconduct and thus this factor weighs against Defendant.

The third factor in the *Barker* analysis is the defendant's assertion or failure to assert the right to a speedy trial. A defendant's assertion of the right "is entitled to strong evidentiary weight in determining whether the right has been denied, and failure to assert the right will make it difficult to prove it was denied." *Wood,* 924 S.W.2d at 347. The defendant's failure to assert the right "implies the defendant does not actively seek a swift trial." *Id.* However, "an accused who is unaware that charges are pending against him . . . cannot be penalized for his . . . failure to assert that right." *Id.* at 347, n. 13. "Evidence that the defendant did not want a speedy trial would never warrant the finding of a constitutional violation except in 'extraordinary circumstances[.]'" *State v. Baker,* 614 S.W.2d 352, 355 (Tenn. 1981) (citing *Barker,* 407 U.S. at 533). Here, Defendant did not assert his right to a speedy trial until after the service of the warrant in August 2021, despite his admission that he was aware of the existence of the warrant for nearly all of the seven-year delay. It is undisputed that Defendant was first aware of the Tennessee warrant for probation violation in September 2014 while incarcerated in Ohio. Defendant now asserts that although he was aware of the warrant in 2014, he did not know of the contents of the warrant until 2019. Even if Defendant did not learn of the contents of the warrant until 2019, he was aware of the warrant and did not assert his right to a speedy trial until August 2021.

Unlike the defendants in *Herl* and *Morris* who asserted their rights to a speedy trial soon after they were made aware of their pending warrants, Defendant in this case followed the alleged advice of state officials where he was incarcerated and failed to return to Tennessee so he would "never have to worry about [the warrant]." Each time Defendant

was released from custody, he traveled to a new state rather than returning to Tennessee to answer the warrant and report to his probation officer. Defendant never asserted his right to a speedy trial until he was extradited to Tennessee in July 2021. Defendant attempted to avoid prosecution altogether, rather than asserting his right to a speedy trial. This factor weighs against him.

When evaluating a delay of prosecution for prejudice, courts must remain aware that the speedy trial right is designed to: (1) prevent undue and oppressive pre-trial incarceration; (2) minimize anxiety and concern accompanying public accusation; and (3) limit the possibility that long delay will impair the defense. *Bishop,* 493 S.W.2d at 85. The most important of these factors is the impairment of the ability to prepare a defense. *State v. Berry,* 141 S.W.3d 549, 568 (Tenn. 2004). Generally, "if witnesses die or disappear during a delay, the prejudice is obvious." *Id.* at 587 (citing *Barker,* 407 U.S. at 532). However, a blanket statement that "gives no indication as to the content and relevance of the lost testimony" is not sufficient to establish prejudice. *Id.* at 587-88 (citing *United States v. Harris,* 566 F.3d 422, 433 (5th Cir. 2009)). Moreover, a lost possibility of obtaining concurrent sentencing is not sufficient prejudice to establish a speedy trial violation. *Simmons,* 54 S.W.3d at 761. Concurrent sentencing is a factor to consider. *Id.* The court in *Simmons* found that the defendant had failed to show a "statute mandating concurrent sentences," and that he had failed to establish that he "probably would have obtained concurrent sentences, or that he was a favorable candidate for concurrent sentencing." *Id.*; *see also State v. Daryll Shane Stanley,* No. E2013-01739-CCA-R3-CD, 2014 WL 5280543, at *6 (Tenn. Crim. App. Oct. 15, 2014) (holding that the defendant had failed to establish prejudice as to the missed opportunity of concurrent sentencing where the defendant did not show a statute mandating concurrent sentences, nor did he establish that he would have obtained concurrent sentences, or that he was a good candidate for concurrent sentencing).

We do not find that Defendant was prejudiced by the delay. Defendant was not incarcerated unduly or oppressively in the instant case. *See Bishop,* 493 S.W.2d at 285. Defendant's incarceration throughout the seven-year delay was the result of his own criminal activity in multiple states while on probation in Tennessee. Defendant raises no concern regarding the anxiety or public accusation associated with a delay in the prosecution of his alleged probation violations, nor do we find that any existed. *Id.* Defendant makes two arguments with respect to the possible impairment to his defense as a result of the seven-year delay. Defendant first argues that he lost the opportunity to have his original probation officer testify at his probation revocation hearing. However, Defendant conceded that he violated the terms of his sentence of probation and admitted that he was arrested and convicted in other states without informing his probation officer. Accordingly, the trial court correctly concluded that, despite the absence of Defendant's original probation officer, there was no "critical missing witness" who could have

explained Defendant's repeated and intentional violations of the conditions of his probation, allowing him to defend the charge of having violated his probation. Defendant also argues that he suffered prejudice in the lost possibility of concurrent sentencing with the subsequent convictions in other states. Defendant has offered neither a statute mandating that his sentences run concurrently, nor proof that he would have been a favorable candidate for or would likely have received concurrent sentences. To the contrary, he testified that he committed other crimes while on probation in Tennessee. Defendant has not proven that he suffered prejudice as a result of the delay in his prosecution. We conclude that Defendant's right to a speedy trial was not violated by the delay in serving him with the probation revocation warrant. Defendant is not entitled to relief.

## Conclusion

Based on the foregoing analysis, we affirm the judgment of the trial court.

_____
JILL BARTEE AYERS, JUDGE